UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re: Chapter 11

Insource Supplies LLC, Case No. 24-10571-JPM

Debtor.

---------------------------------------------------------x

**DEBTOR'S OMNIBUS MOTION FOR (I) ENTRY OF STIPULATED ORDER WITH CF BANK AND (II) AUTHORIZING USE OF CASH COLLATERAL**

Insource Supplies LLC (the "Debtor") submits this motion (i) for approval and entry of the stipulated order with CF Bank N.A. ("CF Bank"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing its secured claim in the total sum of $1,500,000 to be paid over sixty (60) months for purposes of treatment under the Debtor's Amended Subchapter V Plan of Reorganization and (ii) authorizing use of cash collateral (the "Omnibus Motion") pursuant to Section 363 or title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and in support of this Omnibus Motion, the Debtor represents as follows:

**BACKGROUND**

1. On April 5, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtor is currently operating, as debtor-in-possession, its business as a medical supply company pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. Samuel Dawidowicz has been appointed Subchapter V trustee (the "Subchapter V Trustee") in this case and is acting as such.

3. The commencement of Debtor's Chapter 11 case was in direct response to a judgment obtained by CF Bank in Ohio to enforce unpaid secured loan obligations owed by the

Debtor under a revolving credit facility. CF Bank installed a receiver prior to the bankruptcy and was the main protagonist during this bankruptcy case.

4. After filing its Chapter 11 petition, the Debtor successfully opposed a motion to continue the pre-petition receivership, enabling the Debtor to focus on repositioning its business under a new supply agreement with Astor Pharmaceutical LLC ("Astor"). Pursuant to the Astor relationship, the Debtor is effectively an Astor sales representative procuring orders from third party customers which Astor in turn ships and supplies based on a 50%-50% share of net proceeds.

5. CF Bank filed a secured claim in Debtor's Chapter 11 case asserting a security interest in all of the Debtor's receivables in the total sum of $1,626,276.17 [Claim No. 8-1] (the "Secured Claim"). Moreover, CF Bank did not initially consent to the use of cash collateral as sought by the Debtor, even though the Debtor cannot operate its business to full capacity without the use of cash collateral.

6. In the interim, the Debtor filed a plan of reorganization on July 1, 2024 [ECF No. 33] which triggered a new round of negotiations. Following several weeks of discussions, the Debtor and CF Bank have reached a settlement relating to the final disposition of CF Bank's Secured Claim for purposes of the Debtor's plan of reorganization. The resolution of CF Bank's Secured Claim is a critical aspect of the bankruptcy and allows for the use of cash collateral as memorialized in the stipulated order annexed hereto as **Exhibit "A"** (the "Settlement").

7. Based upon the Settlement, the Debtor acknowledges that (i) the post-petition accounts receivables garnered from the Astor sales also constitute cash collateral and (ii) CF Bank shall have an allowed secured claim in the total sum of $1,500,000 to be paid in accordance with the Debtor's Amended Subchapter V Plan of Reorganization (the "Plan") over a period of five (5) years.

## APPROVAL OF SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

8. The Settlement reached with CF Bank should be approved under Bankruptcy Rule 9019 because it is fair, equitable and is in the best interests of the Debtor's estate. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). Approval of the Settlement is within the sound discretion of the Bankruptcy Court. *See id.* at 641.

9. Courts in the Second Circuit have set forth seven (7) factors in evaluating whether a settlement is fair and equitable:

> 1. the balance between the litigation's possibility of success and the settlement's future benefits;
>
> 2. the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> 3. the paramount interests of the creditors (including each affected class's relative benefits) and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> 4. whether other parties support the settlement;
>
> 5. the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing the settlement;
>
> 6. the nature and breadth of releases to be obtained by officers and directors; and
>
> 7. the extent to which the settlement is the product of arm's-length bargaining.

*Motorola, Inc. v. Off. Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (internal quotations omitted).

10. *First factor*: CF Bank's Secured Claim, which has already been reduced to judgment in Ohio, is well documented and the Debtor would face an uphill battle with regard to any objection thereto. Thus, the reduction of the Secured Claim to a fixed sum of $1,500,000 to

be paid through monthly installments over a sixty (60) month period pursuant to the Debtor's Plan provides an immeasurable benefit to the Debtor's estate by allowing it to remain operational and pay down the debt over time. Therefore, factor one weighs in favor of approving the Settlement.

11. *Second and third factors*: The Settlement is critical to the Debtor's plan of reorganization and the continued operation of the Debtor. If the Debtor is unable to continue its business operations, and therefore unable to produce future accounts receivables, it is unlikely that CF Bank, or any creditor, would realize any meaningful recovery of their claims. Thus, the Settlement is in the paramount interests of Debtor's creditors because it allows for significant recovery pursuant to the Plan where there otherwise would be none. Therefore, factors two and three weigh in favor of approving the Settlement.

12. *Fourth factor*: The Subchapter V Trustee does not oppose the Settlement. Moreover, for the reasons stated above, it is unlikely that any other party would oppose the Settlement because it allows for a larger recovery to creditors under the Debtor's Plan. Therefore, factor four weighs in favor of approving the Settlement.

13. *Fifth factor*: The Debtor and CF Bank are represented by experienced counsel. Therefore, the fifth factor weighs in favor of approving the Settlement.

14. *Sixth factor*: The Settlement does not encompass any immediate releases, but contemplates a forbearance of the obligations under the guaranty pending Debtor's payments to CF Bank under the Plan. Upon completion of the payments to CF Bank under the Plan, the guarantor will be released and discharged of his obligations to CF Bank. Therefore, the sixth factor weighs in favor of approving the Settlement.

15. *Seventh factor*: The Settlement was the result of extensive discussions that were negotiated at arm's length over the course of many weeks. Therefore, the seventh factor weighs in favor of approving the Settlement.

16. The above seven factors establish that the Settlement is fair, equitable and is in the best interests of the Debtor's estate. For these reasons, the Settlement will likely pave the way for an uncontested confirmation hearing.

17. Accordingly, the Bankruptcy Court should approve the Settlement pursuant to Bankruptcy Rule 9019.

**SPECIFIC PROVISIONS OF THE CASH COLLATERAL ORDER[1]**

18. The Settlement with CF Bank also provides the added benefit of the use of cash collateral, which is consistent with the requirements of Local Rule 4001-2, as is outlined here:

(i) Local Rule 4001-2(a)(i): the use of cash collateral is predicated upon an agreed budget annexed to the Plan.

(ii) Local Rule 4001-2(a)(ii): the material conditions to use of cash collateral are as follows:

a. allowance of CF Bank's secured claim—to be classified under the Plan as the sole class 1 secured claim and paid in equal monthly installments of $25,000 over a term of sixty (60) months without interest; and

b. As adequate protection for the Debtor's use of cash collateral, Debtor shall pay out (i) all prep-petition collections currently on deposit with JPMorgan Chase Bank shall be paid over to CF Bank to reduce its secured claim, and (ii) the sum of $10,000 per month shall be paid to CF Bank prior to confirmation to be applied to reduce the Allowed Claim; and

(iii) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(iii) (i.e. pricing and economic terms).

(iv) Local Rule 4001-2(a)(iv): Subject to any challenge rights under Local Rule 4001-2(e), CF Bank is granted a continuing replacement lien and security interest covering cash collateral. CF Bank's liens and security interests are deemed valid,

[1] In the event of a conflict between the summary provided herein and the express terms of the Cash Collateral Order, the express terms of the Cash Collateral Order shall govern.

binding, perfected and enforceable without the necessity of filing or recording of any UCC-1 financing statement or other instrument.

(v) Local Rule 4001-2(a)(v): CF Bank's continuing replacement lien and security interest shall not include the Debtor's avoidance claims and causes of action under Bankruptcy Code §§ 544, 545, 547, 548, 549 or 550 (collectively, the "Avoidance Actions"), and additionally, shall be subject to a carve out for (a) the reasonable legal fees and expenses that may be awarded to the Debtor's counsel not to exceed $25,000.00 and the Subchapter V Trustee as contemplated by the Plan, and (b) the costs of administrative burial expenses not to exceed $10,000 in the event of a conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

(vi) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(vi) (i.e. cross-collateralization or the grant of administrative priority).

(vii) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(vii) (i.e. rollup of pre-petition debt).

(viii) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(viii) (i.e. a limitation of the Court's power or discretion).

(ix) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(ix) (i.e. a lender's obligation to fund certain activities).

(x) Local Rule 4001-2(a)(x): CF Bank may declare a termination of the Debtor's rights to use cash collateral upon the occurrence of an Event of Default (as defined in the Cash Collateral Order) and the failure to cure such default within the 10-day cure period.

(xi) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(xi) (i.e. change-of-control).

(xii) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(xii) (i.e. sale of estate property).

(xiii) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(xiii) (i.e. prepayment penalty, termination fee, etc.).

(xiv) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(xiv) (i.e. joint administration, join-liability of debtors or inter-debtor claims).

(xv) No provision of the Cash Collateral Order falls under Local Rule 4001-2(a)(xv) (i.e. funding of non-debtor affiliates).

(xvi) No provision of the Cash Collateral Order falls under Local Rule 4001-(a)(xvi) (i.e. payment of a lender's or agent's expenses and fees).

**Use of Cash Collateral Is Necessary and Appropriate**

19. The Debtor requires the complete use of cash collateral to pay accrued and future expenses in connection with operating its business in accord with the proposed budget annexed to the Plan.

20. Accordingly, CF Bank has stipulated to the Debtor's use of cash collateral in accordance with Section 363(c) of the Bankruptcy Code pending confirmation of the Plan.

21. In accordance with the Bankruptcy Rules, the Debtor shall provide notice of the hearing by regular mail or email to (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) CF Bank through its counsel; (iv) all known creditors; (v) all persons who filed notices of appearance with the Clerk of the Court.

**WHEREFORE**, the Debtor respectfully prays for the entry of the Cash Collateral Order together with such other relief as may be just and proper.

Dated: New York, New York
August 12, 2024

GOLDBERG WEPRIN
FINKEL GOLDSTEIN LLP
125 Park Avenue, 12th Fl.
New York, New York 10017
(212) 221-5700

By: /s/ Kevin J. Nash

*Attorneys for the Debtor*