# EXHIBIT "A"

## LENDER SETTLEMENT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                                   Chapter 11

Insource Supplies LLC,                                   Case No. 24-10571-JPM

                          Debtor.

-------------------------------------------------------------x

## STIPULATION OF SETTLEMENT AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL PENDING CONFIRMATION AND ALLOWING CF BANK N.A.'S SECURED CLAIM FOR PURPOSES OF TREATMENT UNDER THE DEBTOR'S AMENDED PLAN OF REORGANIZATION

The Debtor herein, Insource Supplies LLC, (the "Debtor") and CF Bank NA ("CF Bank") have reached this settlement relating to the allowance and treatment of CF Bank's secured claim and now are in a position to stipulate to the use of cash collateral pending confirmation on the following terms and conditions:

### RECITALS

A.     On April 5, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  The Debtor is currently operating as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code following a turnover of possession by the state court Receiver after his motion to excuse compliance with the turnover provisions of the Bankruptcy Court was denied.

B.     Samuel Dawidowicz has been appointed Subchapter V trustee in this case and is acting as such.

C.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

1

D.      The Debtor operates a medical supply business and prior to the Petition date entered into an agreement with Astor Pharmaceutical LLC ("Astor") to, *inter alia*, procure orders from third party customers which Astor in turn ships and supplies based on a 50%-50% share of net proceeds (hereinafter, the "Post-Petition Accounts Receivable").

E.      CF Bank asserts a first lien and security interest to secure a loan in the principal sum of $1,626,276.17 covering, among other things, the Debtor's pre-petition accounts receivable, which the Debtor acknowledges constitute CF Bank's "cash collateral" within the meaning of Bankruptcy Code § 363(a).

F.      Based upon the parties' settlement and resolution of CF Bank's secured claim as provided hereunder, the Debtor also hereby acknowledges that (i) the Post-Petition Accounts Receivable also constitute Cash Collateral and (ii) CF Bank shall have an allowed secured claim in this bankruptcy case in the total sum of $1,500,000.00 to be paid in accordance with the Debtor's Amended Subchapter V Plan of Reorganization (the "Plan").  Debtor shall include and agree to this allowance in any amendment or modification of the Plan.

G.      Pursuant to Bankruptcy Code § 363(c)(3), the Debtor cannot use the Cash Collateral without the consent of CF Bank or an Order of the Bankruptcy Court.

H.      The Debtor cannot operate its business without the use of Cash Collateral.

I.      The Debtor reasonably believes that the value of its estate will be enhanced by the use of Cash Collateral.

J.      CF Bank is entitled to receive adequate protection in respect to the Debtor's use of Cash Collateral.

**NOW, THEREFORE,** it is Stipulated and Ordered as follows:

4865-2005-3716, v. 1

1. <u>Incorporation of Recitals</u>. The foregoing recitals "A" through "J" are hereby incorporated by this reference and made a part of this Order.

2. <u>Effectiveness of Order</u>. This Order shall be effective immediately upon the entry hereof.

3. <u>Allowance of CF Bank's Secured Claim</u>. The Debtor and CF Bank agree that as of the Petition Date, the allowed amount of CF Bank's secured claim for purposes of treatment and distribution under the Debtor's Plan shall be fixed in the total sum of $1,500,000 without any additional interest, fees or other reimbursement (the "<u>Allowed Claim</u>"). The Allowed Claim shall be classified under the Plan as the sole Class 1 Secured Creditor, to be paid in equal monthly installments over a term of sixty (60) months without interest. CF Bank shall receive a replacement lien on the Debtor's post-petition and post-confirmation accounts receivable during the term of the Plan.

4. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this stipulation, pursuant to Bankruptcy Code § 363(c)(2), the Debtor is authorized to use the Cash Collateral through confirmation of the Plan.

5. <u>Adequate Protection Lien</u>. As adequate protection against and to the extent of any diminution in value of CF Bank's interest in Cash Collateral pending confirmation of the plan, CF Bank is hereby granted (without the necessity of the execution, recording or filing of additional mortgages, security agreements, pledge agreements, financing statements or other documents) a continuing replacement lien and security interest covering the Cash Collateral, except that CF Bank's interest in Cash Collateral shall not include the Debtor's avoidance claims and causes of action under Bankruptcy Code §§ 544, 545, 547, 548, 549 or 550 (collectively, the "<u>Avoidance Actions</u>"), and additionally, shall be subject to a Carve Out (defined below).

Furthermore, the dispute concerning the extent and scope of CF Bank's lien and security interest has been resolved pursuant to the terms hereof and the Debtor shall be authorized to collect all accounts receivable pursuant to the terms hereof to be paid in accordance with the Plan. These lien rights shall continue after the confirmation of the Plan, and any amendment or modification thereof.

6.     <u>Perfection of Interest in Cash Collateral</u>. This Order shall be sufficient and conclusive evidence of CF Bank's interest in Cash Collateral (both pre-petition and post-petition) without the necessity of filing or recording of any UCC-1 financing statement or other instrument or document which may otherwise be required under state law.

7.     <u>Adequate Protection Payments</u>. As adequate protection for the use of Cash Collateral, the Debtor shall pay out the following: (i) all pre-petition collections currently on deposit with JPMorgan Chase Bank shall be paid over to CF Bank, on August 10, 2024, to reduce the Allowed Claim; and (ii) the sum of $10,000 per month shall be paid to CF Bank prior to confirmation to be applied to reduce the Allowed Claim with the first payment beginning on August 10, 2024 and continuing monthly thereafter. CF Bank shall be entitled to retain any money paid in the event of a conversion to Chapter 7, dismissal of the bankruptcy, or in the event of a failure to confirm the Plan.

8.     <u>Further Obligations</u>. The Debtor shall perform the following additional obligations:

    (a)    Utilize Cash Collateral and Cash to pay the accrued and future expenses of operating the Debtor's business in accordance with the proposed budget annexed to the Plan (the "<u>Budget</u>");

(b) Account for the expenditures of Cash Collateral as part of the Debtor's monthly operating reports to be filed with the Bankruptcy Court in accordance with the guidelines of the United States Trustee; and

(c) Proceed with confirmation of the Plan in a prompt manner.

9. <u>Events of Default</u>. The occurrence of any of the following events, unless waived by CF Bank in writing, shall constitute an event of default if not cured after ten (10) days written notice to the Debtor and its counsel (collectively, the "<u>Events of Default</u>"):

(a) The Debtor's failure to materially perform any of the terms, provisions, and covenants under this Order including payments in excess of budgeted items (subject to a variance of ten (10%) per item) without further Order of the Court or consent of CF Bank;

(b) The Debtor's failure to file monthly operating reporting as required by the US Trustee guidelines by the 20th of the month following each calendar month reporting period; and

(c) A default by the Debtor in paying monthly adequate protection payment of $10,000 to CF Bank on the first (1st) day of each month pending confirmation of the Plan.

10. <u>Rights and Remedies upon Event of Default</u>. After the occurrence of an uncured Event of Default, CF Bank may declare a termination of the Debtor's right to use Cash Collateral by delivering to the Debtor a "<u>Termination Declaration</u>" which shall become effective after five (5) business days thereafter (the "<u>Termination Date</u>"); except that the Debtor shall be entitled to file a motion for an emergency hearing with the Court to show cause why the authorization to use Cash Collateral should continue. Unless the Court determines otherwise, upon the

Termination Date, (i) the Debtor shall no longer have the right to use Cash Collateral; and (ii) CF Bank shall be permitted to seek applicable relief from the Bankruptcy Court to exercise all other rights and remedies set forth herein.

11.     <u>Carve Out</u>. The rights, claims and interests of CF Bank in the Cash shall be subordinate to the following (collectively, the "<u>Carve Out</u>"): (a) the reasonable legal fees and expenses that may be awarded to the Debtor's counsel not to exceed $25,000.00 and the Subchapter V Trustee as contemplated by the Plan, and (b) the costs of administrative burial expenses not to exceed $10,000 in the event of a conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

12.     <u>Consensual Forbearance</u>.  Based upon this settlement, CF Bank hereby agrees to forebear from pursuing further discovery and enforcement action against the Debtor during the term of the Plan so long as no uncured default occurs with respect to the monthly distributions to CF Bank due thereunder.  If the Debtor completes all required Plan payments to CF Bank, then Eli Bensoussan shall then be fully released and discharged from any and all liability owed to CF Bank and any judgment entered against him related to the default of Debtor shall be deemed satisfied at that time.  Nothing herein shall be construed as limited or prohibiting CF Bank from taking enforcement action against Debtor's principal, Elisha Bensoussan.

13.     <u>No Liability to Third Parties</u>. In authorizing the Debtor's use of Pre-Petition Cash Collateral or the Potential Post-Petition Cash Collateral under the terms set forth herein in this Order, CF Bank (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States

Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtor, its creditors or its bankruptcy estate.

14.    <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to enforce this Order and determine any dispute arising hereunder.

Dated: New York, New York
      August \_\_\_, 2024

 

_____
HON. JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE
